| | |
|---|---|
| ALLEN HAMMLER,<br>CDCR #F-73072,<br><br>Plaintiff,<br><br>vs.<br><br>D. HOUGH, Correctional Officer, et al.<br><br>Defendants. | Case No.: 3:18-cv-01319-LAB-BLM<br><br>**ORDER**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO**<br>**28 U.S.C. § 1915(e)(2)(B) AND**<br>**28 U.S.C. § 1915A(b)** |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALLEN HAMMLER ("Plaintiff"), proceeding pro se and while incarcerated at California State Prison–Sacramento ("SAC"), in Represa, California, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1.

Plaintiff claims several correctional officers at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, violated his First and Fourteenth Amendment rights while he was incarcerated there on October 16, 2016, by failing to collect and

///

process his outgoing legal mail at his request.[1] *Id.* at 3-11. He alleges to have exhausted available administrative remedies before filing suit via CDC 602 Inmate Parolee Appeal Log No. RJD-B-16-4400, which he attaches as an exhibit, *id.* at 12, 16-19, and his Complaint is verified under penalty of perjury. *Id.* at 11. Plaintiff seeks $140,000 in general and punitive damages. *Id.* at 14.

Plaintiff did not pay the civil filing fee at the time of filing, but he has since filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

///

///

---

[1] Plaintiff has identified, and the Court takes judicial notice of, six separate civil rights actions he has filed in the Southern District of California Court over the course of the last year. *See* Compl., ECF No. 1 at 13. All but one of the Southern District cases remains pending, and a preliminary review of those pleadings indicates that none appear related to the claims Plaintiff alleges in this case. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted). In both *Hammler v. Aviles*, S.D. Cal. Civil Case No. 3:17-cv-01185-AJB-WVG ("*Aviles*") and *Hammler v. Alvarez, et al.*, S.D. Cal. Civil Case No. 3:17-cv-01533-JAH-WVG ("*Alvarez I*"), Plaintiff alleges different sets of correctional officers at RJD used excessive force at RJD in late October and early November 2016—several weeks apart. *See Aviles*, ECF No. 1 at 1, 3-9; *Alvarez I*, ECF No. 1 at 1-15. In *Hammler v. Hernandez, et al.*, S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD, Plaintiff claims two RJD correctional officers not named as parties in *Aviles* or *Alvarez I* retaliated against him for having filed administrative grievances related to the excessive force incidents at issue in *Aviles*. *See id.*, ECF No. 1 at 3. Plaintiff has since filed another case, *Hammler v. Alvarez*, et al., S.D. Cal. Civil Case No. 3:18-cv-00326-AJB-WVG ("*Alvarez II*"), in which he again accuses RJD officer Alvarez and others of excessive force, retaliation, and due process violations related to a third incident at RJD arising on November 28, 2016 and November 29, 2016. *See id.,* ECF No. 1 at 2-14. Finally, in *Hammler v. Kernan, et al.,* S.D. Cal. Civil Case No. 3:18-cv-1170-DMS-NLS, Plaintiff alleges CDCR and RJD classification officials violated his First and Fourteenth Amendment rights by "breaching a contract" he claims guarantees his housing on a "gang free" yard. *See id.,* ECF No. 1 at 4-16. Judge Bencivengo has already cautioned Plaintiff that that he may not raise duplicative claims in separate actions, *see Hammler v. Hernandez*, 18cv00259-CAB-MDD, ECF No. 5 at 5 n.2 (citing *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995)), and that he is "required to pay the full amount of a filing fee," for *each* civil action he files. *Id.* (citing 28 U.S.C. § 1915(a)(b)(1); *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 632 (2016) ("Just as § 1915(b)(1) calls for assessment of 'an initial partial filing fee' each time a prisoner 'brings a civil action or files an appeal' (emphasis added), so its allied provision, § 1915(b)(2), triggered immediately after, calls for 'monthly payments of 20 percent of the preceding month's income' simultaneously for each action pursued.")).

2

## I. Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

///

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted a certified copy of his CDCR Inmate Statement Report. *See* ECF No. 2 at 4-6; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. This report shows Plaintiff has incurred thousands of dollars in PLRA obligations, photocopying, institutional mail, and damages charges while incarcerated, but has had no income, and thus, had no available balance on the books at the time of filing. *See* ECF No. 2 at 4-6. Based on this accounting, no initial partial filing fee is assessed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and declines to exact any initial filing fee because his prison certificate indicates he has "no means to pay it," *Bruce*, 136 S. Ct. at 629, but directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

**II.     Sua Sponte Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)**

     A.     <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir.

2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Allegations</u>

Plaintiff's factual allegations are simple: on October 16, 2016, at approximately 6:00 p.m., he told Correctional Officer Hough that he "had legal mail to go out and would need tape." *See* Compl., ECF No. 1 at 4. Hough is alleged to have told Plaintiff he had none and walked away. *Id.*

When Plaintiff told Officer Nevarez, "who was collecting mail and doing the pipe-check security walk" two hours later that he had "six separate pieces of mail," Nevarez

replied, "Next round." *Id.* at 5. Plaintiff then claims when Hough, who "did the walk" during the "next round," was again asked if he was going to "get [Plaintiff's] mail out," Hough replied, "I thought you needed tape," and claimed "they already did mail pick up." *Id.* Plaintiff "continued to stand at his door until he saw Sgt. Alvarez," and complained to him, but Alvarez refused to accept the mail himself and said, "I'm going to send someone up right now." *Id.* at 6.[3] By "10:00 p.m. they all left," and Plaintiff claims his mail remained with him until the following day, when Plaintiff refused to return a pair of handcuffs until his mail was collected by another officer. *Id.* at 8.

Based on this incident, Plaintiff claims Defendants Hough, Nevarez, Asbury, and Alvarez violated his First Amendment right to freedom of speech, retaliated against him, and violated his Fourteenth Amendment right to equal protection. *Id.* at 3, 8-11. He seeks $210,000 in general and punitive damages based on his "mental and emotional anguish." *Id.* at 14.

C. First Amendment / Mail Claims

Plaintiff has "a First Amendment right to send and receive mail," but prison regulations or policies may curtail that right if they "are reasonably related to legitimate penological interests." *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (citing *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (internal quotation marks omitted)); *see also Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (holding that prison officials may open, but not read, incoming legal mail in the presence of the inmate). Legitimate penological interests that justify regulation of outgoing legal mail include "the prevention of criminal activity and the maintenance of prison security." *Nordstrom*, 856 F.3d at 1272 (citing *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996)).

///

---

[3] Plaintiff also claims Sgt. Alvarez told him the next day that he sent Officer Asbury to collect Plaintiff's mail the night before, but Asbury falsely noted in a CDCR 114-A Log Schedule that Plaintiff "ignored" him. *See* Compl., ECF No. 1 at 8.

6

3:18-cv-01319-LAB-BLM

Thus, while allegations of stolen mail or delivery delayed for "an inordinate amount of time" have been held sufficient to state a claim for violation of the First Amendment, *see e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996), the Ninth Circuit and other Courts of Appeal have found temporary and or isolated instances of delay, without more, do not violate a prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Furnace v. Cope*, No. 1:16-CV-00420-LJO-BAM PC, 2018 WL 2198716, at *7 (E.D. Cal. May 14, 2018) (recommending sua sponte dismissal of prisoner's outgoing mail claims pursuant to 28 U.S.C. § 1915A(b)(1), (2) and 28 U.S.C. § 1915(e)(2)(B)(ii)).

The Court has failed to uncover any case in which a one-day delay in collecting a prisoner's outgoing legal mail was held sufficient to plead a plausible First Amendment violation. *See e.g., Crofton,* 170 F.3d at 961 (finding a "temporary delay in the delivery of Crofton's publications, resulting from the prison official's security inspection, does not violate his First Amendment rights."); *Sizemore v. Williford,* 829 F.2d 608, 610 (7th Cir. 1987) (emphasizing that "merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support ... a cause of action grounded upon the First Amendment"); *Young v. Tampkins*, No. CV 16-cv-07455-JFW-RAO, 2017 WL 2389974, at *5 (C.D. Cal. May 12, 2017) ("A temporary delay or isolated incident of mail interference is usually insufficient to establish a constitutional violation."), *report and recommendation adopted*, 2017 WL 2381270 (C.D. Cal. June 1, 2017).

Critically, Plaintiff does *not* claim Defendants read, censored, opened, or inspected his legal mail outside his presence, *see e.g., Hayes v. Idaho Corr. Ctr.,* 849 F.3d 1204, 1211-13 (9th Cir. 2017), failed to accept, or even mail it altogether. In fact, Plaintiff admits his legal mail was collected in his presence and that it was "signed" and sealed for
///

7

delivery within 24 hours of his initial request.[4] *See* Compl., ECF No. 1 at 8. Defendants' refusal or inability to do so immediately, and upon his demand—regardless of any other legitimate correctional goal or need for institutional order—does not by itself constitute a First Amendment violation. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (identifying security, order, and rehabilitation as governmental interests sufficient to justify restrictions on outgoing prisoner mail); *see also Avila v. Brown*, No. 1:17-CV-01328-LJO-BAM PC, 2018 WL 1806624, at *2 (E.D. Cal. Apr. 17, 2018) (noting that prisoners "do not have a constitutional right to unlimited free access to the mail," and dismissing allegations that the failure to provide prisoners with "free pen fillers every day" violated the First Amendment).

Therefore, Plaintiff's First Amendment mail collection claims must be dismissed for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

///

---

[4] CAL. CODE REGS., tit. 15 § 3130, et seq., contain the CDCR's regulations for "provid[ing] … the orderly processing of inmate mail," and "give direction to staff, inmates, and their correspondents concerning facility mail requirements. *See id.*; *K'Napp v. Adams*, No. 1:06-cv-01701-LJO-GSA-PC, 2015 WL 5138237 at *17 (E.D. Cal. Sept. 1, 2015) (finding that § 3130 and CDCR's mail processing regulations "further[] the substantial governmental interest of internal order" in its penal institutions as required by *Procunier*). CAL. CODE REGS., tit. 15 § 3131 (2018), further provides that "[e]ach warden or head of a correctional facility shall prepare and maintain a plan of operation for the sending and receiving of mail for all inmates housed in the facility[,]" and all newly received inmates must be "promptly inform[ed] … of all department regulations and local procedures governing inmate mail." *Id.* (eff. 7-17-2008). Section 3142(d), which specifically governs the "Processing of Outgoing Confidential Mail," further requires that:

> Inmates shall post confidential mail by presenting the mail unsealed to designated staff. In the presence of the inmate, the staff shall remove the contents of the envelope upside down to prevent reading of the contents. Staff shall remove the pages and shake them to ensure there is no prohibited material, consistent with these regulations. If no prohibited material is discovered, the contents shall be returned to the envelope and sealed. Staff shall place their signature, badge number and date across the sealed area on the back of the envelope. Staff shall then deposit the confidential mail in the appropriate depository.

*Id.* § 3142(d) (eff. 7-17-2008).

D. Access to the Courts

Because Plaintiff alleges the envelopes he wished to submit were "legal mail," *see* Compl., ECF No. 1 at 4, 5, 8, the Court will also consider whether he has sufficiently pleaded an access to courts violation. *See Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir. 1988) (where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt.); *see also Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc).

Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.").

However, Plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. *Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4). In addition, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Harbury*, 536 U.S. at 413-14. The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently

pursued." *Id.* at 417. Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415.

Plaintiff fails to allege the actual injury required to state an access to courts claim. *See Lewis*, 518 U.S. at 351-53; *Silva*, 658 F.3d at 1104. While he claims Defendants failed to collect his "legal mail" on October 16, 2016, he fails to include any further "factual matter" to show how or why a single day's delay in processing that mail caused him to suffer "actual prejudice" "such as the inability to meet a filing deadline or to present a claim," with respect to any non-frivolous direct appeal, habeas petition, or civil rights action he filed, or even sought to file. *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; *Iqbal*, 556 U.S. at 678. "Actual injury is not demonstrated by the simple fact that a prisoner is 'subject to a governmental institution' that he claims 'was not organized or managed properly.'" *Lewis*, 518 U.S. at 350.

For this additional reason, the Court finds Plaintiff has failed to plead any viable access to courts claim against any of the named Defendants. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

E. <u>Retaliation</u>

Plaintiff also contends Defendants "retaliate[d] against [him] for asserting the right to express his sentiments via the courts," by failing to collect his mail on October 16, 2016. *See* Compl., ECF No. 1 at 9, 10.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected.

///

///

*Watison*, 668 F.3d at 1114.[5] Second, Plaintiff must allege Defendants took adverse action against him.[6] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct.[7] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[8] Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...."[9] *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

Here, Plaintiff claims Defendants refused to collect his legal mail on October 16, 2016, in order to thwart his right to "speak his sentiments freely … via the courts." *See* Compl., ECF No. 1 at 9. By doing so, he adequately pleads the first two elements of a retaliation claim. *Watison*, 668 F.3d at 1114. The right to access to the court is

---

[5] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[6] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

[7] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison,* 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

[8] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill Plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id.* at 569.

[9] Plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that Defendants' actions were arbitrary and capricious, *id*., or that they were "unnecessary to the maintenance of order in the institution." *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984); *Watison*, 668 F.3d at 1114-15. The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." *Id.* at 808.

undoubtedly "protected conduct." *Id.*; *see also Schroeder v. McDonald,* 55 F.3d 454, 461 (9th Cir. 1995) (officials may not "punish the prisoner for exercising his First Amendment right to pursue civil rights litigation in the courts.") (citing *Rizzo*, 778 F.2d at 532). And a correctional officer's refusal to accept an inmate's legal mail is sufficiently "adverse" to any claim an inmate might seek to pursue in a court of law. *See e.g.,Uribe v. McKesson,* No. 08CV01285 DMS NLS, 2011 WL 9640, at *13 (E.D. Cal. Jan. 3, 2011) (finding prisoner's retaliation claims of having his legal mail rejected for processing "because it was not time for legal mail" was a sufficiently "adverse punitive response[].")*; cf., Houston v. Lack*, 487 U.S. 266, 271 (1988) (holding that a pro se prisoner's notice of appeal is considered filed for purposes of Fed. R. App. P. 4 "at the time [he] deliver[s] it to the prison authorities for forwarding to the court clerk," because he has "no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay.").

However, Plaintiff fails to plead facts sufficient to satisfy the three remaining elements of a retaliation claim. Specifically, he fails to allege that any Defendant refused to process his mail between the hours of 6 p.m. and 10 p.m. on October 16, 2016 *because* he sought to exercise his constitutional rights. *Watison*, 668 F.3d at 1114; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (retaliation claims requires a showing that Plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct."). In fact, Plaintiff admits he told Defendant Hough he "needed tape" before his legal mail could be processed. *See* Compl., ECF No. 4-5. Plaintiff further fails to allege facts which plausibly show how or why a one-day delay in the processing of mail "would chill or silence a person of ordinary firmness from future First Amendment activities," *Rhodes*, 408 F.3d at 568, and as currently pleaded, Plaintiff fails to claim that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269, that was "more than minimal." *Rhodes*, 408 F.3d at 568 n.11. Finally, Plaintiff fails to allege Defendants' one-day delay in collecting his mail "failed to advance a legitimate goal of

the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15. Indeed, Cal. Code Regs., §§ 3130 and 3142 provide for the "orderly processing" of an inmate's outgoing confidential mail, and he has failed to allege any facts to plausibly suggest how those regulations were "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984); *Watison*, 668 F.3d at 1114-15; *K'Napp*, 2015 WL 5138237 at *17 (finding CDCR's mail regulations "further[] the substantial governmental interest of governmental order.").

Therefore, Plaintiff's retaliation claims must also be dismissed for failure to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### F. Equal Protection

Last, Plaintiff contends Defendants violated his right to equal protection by failing to collect his mail on October 16, 2016 but "allow[ed] other to forward their mail at the same time." Compl., ECF No. 1 at 9, 11.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). An equal protection claim is pleaded by alleging that a defendant intentionally discriminated against the plaintiff based on his membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or by alleging facts sufficient to plausibly show that similarly situated individuals were intentionally treated differently absent a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff does not allege he was discriminated against because he is a member of any protected class. *Serrano*, 345 F.3d at 1082. He also fails to allege facts to plausibly show other prisoners "similarly situated" were treated differently and that any disparate

13

treatment lacked a legitimate purpose. *See McCollum v. Cal. Dept. of Corr. and Rehab.*, 647 F.3d 870, 880-81 (9th Cir. 2011) (Equal Protection claims require a plaintiff to "articulate which [other persons] were similarly situated or how he is similar to these [persons].").

Thus, without more, Plaintiff's vague and conclusory allegations that Defendants denied him "equal protection of the laws" in violation of the Fourteenth Amendment, *see* Compl., ECF No. 1 at 11, are also insufficient to state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 & n.3 (2007) ("labels and conclusions" are insufficient to state a claim for relief).

    G.    <u>Leave to Amend</u>

In light of his pro se status, the Court grants Plaintiff leave to file an Amended Complaint in order to address the pleading deficiencies identified in this Order, if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**III.    Conclusion and Orders**

For the reasons discussed, the Court:

1)    **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2);

2)    **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

///

14

3:18-cv-01319-LAB-BLM

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott Kernan, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001; and

4) **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: September 21, 2018

_Larry A. Burns_
Hon. Larry Alan Burns
United States District Judge