# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER, CDCR #F-73072, <br><br> Plaintiff, <br><br> vs. <br><br> D. HOUGH, Correctional Officer; J. NEVAREZ, C/O; ASBURY, C/O; J. ALVAREZ, C/O; C/O NOLASCO, <br><br> Defendants. | Case No.: 3:18-cv-1319-LAB-BLM <br><br> **ORDER DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM AND AS FRIVOLOUS PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

Allen Hammler ("Plaintiff"), currently incarcerated at California State Prison in Corcoran, is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. He has been granted leave to proceed *in forma pauperis* ("IFP") and an opportunity to amend his pleading in order to state a claim upon which relief can be granted. His Amended Complaint falls short, and includes different claims previously alleged against the same parties—and already settled—in an entirely different suit. Therefore, the Court dismisses his case.

I.   **Procedural History**

In his original Complaint, Hammler claimed Richard J. Donovan Correctional Facility ("RJD") Officers Hough, Nevarez, Asbury, and Alvarez violated his First and

Fourteenth Amendment rights while he was incarcerated there on October 16, 2016, by failing to collect and process his outgoing legal mail at his request. *See* Compl., ECF No. 1 at 3-11. He alleged to have exhausted available administrative remedies before filing suit via CDC 602 Inmate Parolee Appeal Log No. RJD-B-16-4400, which he attached as an exhibit. *Id.* at 12, 16-19. His Complaint was verified under penalty of perjury, and he sought $140,000 in general and punitive damages. *Id.* at 11, 14.

On September 21, 2018, the Court granted Hammler's IFP Motion, and *sua sponte* dismissed his Complaint in its entirety for failing to state a claim. *See* ECF No. 3 at 3-15, *citing* 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)). In a detailed Order, the Court dismissed Hammler's mail collection, access to courts, retaliation, and equal protection claims—all arising from the single October 16, 2016 incident.[1] *Id.* at 5-14. As is routine in pro se prisoner cases, the Court provided Hammler notice of his pleading deficiencies, and granted him 45 days leave in which to fix them. *Id.* at 6-14. Hammer was also cautioned his Amended Complaint would supersede his original pleading, and that any claim not re-alleged against any previously named Defendant would be considered waived. *Id.* at 12.

After twice requesting and receiving extensions of time in which to amend, *see* ECF Nos. 7, 10, Hammler filed his Amended Complaint ("FAC"). *See* ECF No. 11. His FAC re-names Correctional Officers Hough, Nevarez, Asbury, and Alvarez as Defendants, and it adds Correctional Officer Nolasco as a new party. *Id.* at 1-2. In

---

[1] The Court also took judicial notice of six separate but sequential civil rights actions filed by Hammler in the Southern District of California over the course of 2017 and 2018—almost all involving claims of retaliation and excessive force at RJD. *See* ECF No. 3 at 2 n.1. The Court also noted some of the Defendants in those cases overlapped, but none appeared to include the same mail-processing claims alleged in the original Complaint Plaintiff filed in this case. *Id.* Hammler has previously been warned that he may not to litigate duplicative claims in successive civil actions. *Id.* (citing *Hammler v. Hernandez, et al.*, S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD (ECF No. 5 at 5 n.2); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995)).

addition, Plaintiff's FAC includes Eighth Amendment excessive force allegations arising on October 20, 2016—four days after the incident alleged in his original Complaint, but also involving Defendants Hough, Nevarez, and Alvarez, and including another Correctional Officer (Soto) and a Correctional Sergeant (Skelton)—neither of whom is named as a Defendant in this case. *Id.* at 18-31.

**II.     Screening of Amended Complaint**

As Plaintiff now knows, the Prison Litigation Reform Act ("PLRA") requires review of all complaints filed by persons proceeding IFP, as well as those filed by persons, like him, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under the PLRA, the Court must *sua sponte* dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

A.     <u>Standard of Review</u>

"The purpose of § 1915[] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge in unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), but they may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

B. <u>Allegations in Amended Complaint</u>

In general, the allegations in Hammler's FAC regarding the non-collection of his legal mail on October 16, 2016, while a bit more drawn out, are not materially different than those in his original Complaint. *Compare* Compl., ECF No. 1 at 3-11, *with* FAC, ECF No. 11 at 3-16.

Hammler claims, as he did previously, that on October 16, 2016, at approximately 5 p.m., he first "made contact" with Correctional Officer Hough and informed him that

///

he needed tape[2] and wished to get his mail processing "out of the way" instead of waiting until the 9:30 p.m. shift change when he felt "rushed" by Hough and others who were "trying to … go home" and "get off work." *See* FAC, ECF No. 11 at 6-7. Hammler claims he had seen how "troublesome" it was to obtain tape for his legal mail four days before, when Officer Nolasco "made the excuse" that he could not process the mail without it, and told him there "was no tape left." *Id.* at 4. On that day, October 12, 2016, Hammler "ha[d] to yell for Defendant Alvarez" to process his mail instead. *Id.* at 5.

On October 16, 2016, Hammler claims Hough first left claiming he was going to get tape, but he returned 30 minutes later at 5:30 p.m., announcing there was none. *Id.* at 7. Hammler "told Hough that he had to go find some because he (Plaintiff) had a deadline to submit legal documents and by law the CDCR had to provide things needed to enable him to meet the deadline."[3] *Id.* Hammler contends Hough commented that he "didn't 'have' to do [any]thing, then left." *Id.*

At 6 p.m., Hammler again "caught Hough when he was passing by his cell and asked if he had found some tape." *Id.* at 7-8. Hough replied: "I told you there's no more tape." *Id.* at 8. So, Plaintiff "pull[ed] tape" off one his books, and demanded Hough process his mail "right then and there." *Id.* Hough refused and directed Hammler to give his mail to "who[m]ever picks it up later." *Id.*

During an 8 p.m. security walk or "pipe check," Hammler claims Officer Nevarez passed him by, but promised to come back. *Id.* at 9. He did not, however, and when

---

[2] Hammler does not explain why his legal mail required tape, but the Court presumes, as it did in its September 18, 2018 Order, that it qualified as "Outgoing Confidential Mail" which must be "sealed" after inspection for prohibited material and in his presence. *See* ECF No. 3 at 8 n.4 (citing Cal. Code Regs., tit. 15 § 3142(d)).

[3] Plaintiff does not identify the date of his deadline or the court that set it; nor does he describe the nature of the legal proceeding or the content of the submission that was allegedly due.

Hammler yelled: "Come get my mail!" Nevarez responded: "Next round." *Id.* at 10. Hough conducted the next round at 8:30 p.m., and Hammler again asked Hough to process his mail. *Id.* Hough replied: "They already did mail pick-up!" even though Hammler claims he "already knew that Nevarez had not collected [it]." *Id.*

Nevertheless, Hammler persisted, asking, "Are ya'll gonna let me get my legal mail out?" Hough replied, "Maybe," and kept walking. *Id.* at 11. When Hammler yelled "What do you mean, Maybe[?] You don't have a choice!" Hough replied, "I thought you needed tape and we don't have any." *Id.*

Hammler continued to stand in his door until he saw Officer Alvarez enter the building and so he yelled for him. *Id.* When Alvarez approached 20 minutes later, Hammler complained that he was "tired of having to stand on his cell door for an hour and a half, after everyone else's mail has already been collected." *Id.* at 12. He then attempted to give Alvarez his mail, but Alvarez refused and told him he would "send someone to collect it, right now, stand by." *Id.* Alvarez then left with the other officers at the 10:00 p.m. shift change however, and "never follow[ed] up." *Id.* at 13.

On the next day, October 17, 2016, after Hammler attended a Mental Health Group meeting, and while he was being escorted back to his cell, he attempted to speak with the on duty sergeant about his "legal work." *Id.* The sergeant replied: "Later" and Hammler was returned to his cell. *Id.* at 13. Once there, however, Hammler refused to surrender his cuffs to Correctional Officer Magallanes, and demanded to speak with a sergeant first.[4] *Id.* at 13-14.

An unidentified sergeant responded "right away" and Hammler explained he needed to take "drastic measures" to get his mail out. *Id.* The sergeant directed Hammler

---

[4] Correctional Officer A. Magallanes is a Defendant in another of Hammler's pending cases, but he is not named as a party to this one. *See Hammler v. Hernandez, et al.,* S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD (ECF No. 25).

to surrender the cuffs, said he would grant him access to the law library, and would "sign and forward his legal mail from the night before." *Id.* Hammler "did not believe him and refused knowing that the next step would be for a higher ranking C/O to come and talk to him," but once the sergeant left, Hammler gave his legal mail to Magallanes to sign. *Id.* After this was done, Hammler surrendered the cuffs. *Id.*

Two days later, on October 19, 2016, Hammler again yelled to Nevarez: "I got legal mail!" after he "attempted to walk by [his] cell" and failed to stop and collect "a large yellow piece of paper protruding from his door … with 'Legal Mail' written on it in big bold print." *Id.* at 17. Hammler claims Nevarez said, "I'll come back for yours," and "snap[ped]" "I don't gotta explain myself to you," in response to Hammler's complaints. *Id.*

On the next day, October 20, 2016, Hammler attempted to send his mail out from the day before, but Nevarez again replied that he would "Be back." *Id.* at 18. Hammler assumed Nevarez would "never return," and "in anger continued to yell … 'Come and get my mail!'" until he "became ill." *Id.* at 8-19. He then reported he had chest pain to Correctional Officer Soto, while he was doing another pipe check. *Id.* at 19. Hammler watched as Soto "went directly to the RN's office," returned, laughed, and said "They're gonna come get you." *Id.* Hammler "perceive[ed] that Soto and the others were thinking that he was not really ill but pulling a stunt to get them to accept his mail," so he continued to stand in his door and exclaimed, "Look man, I'm not even tripp'n on the mail no more, I'm serious, I'm in pain." *Id.* at 20.

In response, Officers Soto, Alvarez, and Nevarez arrived at his cell, cuffed him with a "long chain," forcibly removed him from his cell, and allegedly used "brute force" while doing so. *Id.* at 21-23.

The remainder of the factual allegations in Hammler's FAC, and which were not included in his original Complaint in this case, all relate to the October 20, 2016 excessive force incident, and are copied—virtually word for word—from the Complaint he filed on July 27, 2017 in *Hammler v. Alvarez, et al.*, S.D. Cal. Civil Case No. 3:17-cv-

7

01533-WVG, against Defendants Nevarez, Hough, Soto, and Alvarez. *Compare* FAC, ECF No. 11 in 18-cv-01319 at 19-30, ¶¶ 32-55, *with* Compl., ECF No. 1 at 1-14, ¶¶ 2-25 in 18-cv-01533-WVG. That case settled on July 24, 2018, and Defendants have satisfied the monetary terms of the settlement agreement. *See* S.D. Cal. Civil Case No.18-cv-01533-WVG, ECF Nos. 31, 34, 42.

C. <u>Discussion</u>

    1. *October 12 and 16, 2016 Mail Incidents*

As he did in its original Complaint, Plaintiff's FAC claims Defendants Hough, Nevarez, and Alvarez violated his First Amendment rights to "free speech and expression," and retaliated against him on October 16, 2016, by refusing to process his legal mail upon demand, and thereby delaying its processing over one night. *See* ECF No. 11 at 6-16. He adds similar mail processing allegations against Defendant Nolasco arising on October 12, 2016—but he also admits that his mail was nevertheless accepted by Defendant Alvarez later that same day. *Id.* at 3-5. Hammler also contends Hough, Nevarez, and Alvarez denied him equal protection on October 16, 2016 because they collected mail from other inmates in his unit. *Id.* at 33. He includes no factual allegations as to Defendant Asbury whatsoever.

As pleaded, Hammler's FAC still fails to state any plausible First or Fourteenth Amendment claim for relief as to his mail. First, while he enjoys "a First Amendment right to send and receive mail," prison regulations or policies may curtail that right if they "are reasonably related to legitimate penological interests." *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (citing *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (internal quotation marks omitted)). Legitimate penological interests that justify regulation of outgoing legal mail include "the prevention of criminal activity and the maintenance of prison security." *Nordstrom*, 856 F.3d at 1272 (citing *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996)).

Title 15 of the California Code of Regulations § 3130, et seq., set out the rules correctional officers must follow to "provide [for] … the orderly processing of inmate

mail," and they "give direction to staff, inmates, and their correspondents concerning facility mail requirements." *See id*.; *K'Napp v. Adams*, No. 1:06-cv-01701-LJO-GSA-PC, 2015 WL 5138237 at *17 (E.D. Cal. Sept. 1, 2015) (finding that § 3130 and CDCR's mail processing regulations "further[] the substantial governmental interest of internal order."). As noted above, those regulations further provide that the type of "outgoing confidential mail" Hammler wished to process both on October 12, 2016, and October 16, 2016, required special handling, *i.e.*, individualized inspection for contraband while unsealed, followed by subsequent sealing (presumedly with the tape Hammler admits Defendants told him was not currently available), and the signature and badge number of correctional staff designated to perform that task. *See* Cal. Code Regs., tit. 15 § 3142(d). Hammler fails to allege these regulations lack any legitimate penological purpose. *Nordstrom*, 856 F.3d at 1272.

And while allegations of stolen mail or delayed delivery for "an inordinate amount of time" have been held sufficient to state a claim for violation of the First Amendment, *see e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996), the Ninth Circuit and other Courts of Appeal have found temporary and or isolated instances of delay, like those alleged to have occurred in Hammler's case, do not offend any First Amendment principles. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Furnace v. Cope*, No. 1:16-CV-00420-LJO-BAM PC, 2018 WL 2198716, at *7 (E.D. Cal. May 14, 2018) (recommending sua sponte dismissal of prisoner's outgoing mail claims pursuant to 28 U.S.C. § 1915A(b)(1), (2) and 28 U.S.C. § 1915(e)(2)(B)(ii)).

Indeed, as the Court noted in its September 21, 2018 Order, it has uncovered no case in which a one-day delay in collecting a prisoner's outgoing legal mail has been held sufficient to violate the First Amendment. *See e.g., Crofton,* 170 F.3d at 961 (finding a "temporary delay in the delivery of Crofton's publications, resulting from the prison official's security inspection, does not violate his First Amendment rights."); *Sizemore v.*

*Williford,* 829 F.2d 608, 610 (7th Cir. 1987) (emphasizing that "merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support ... a cause of action grounded upon the First Amendment"); *Young v. Tampkins*, No. CV 16-cv-07455-JFW-RAO, 2017 WL 2389974, at *5 (C.D. Cal. May 12, 2017) ("A temporary delay or isolated incident of mail interference is usually insufficient to establish a constitutional violation."), *report and recommendation adopted*, 2017 WL 2381270 (C.D. Cal. June 1, 2017).

Hammler also still fails to claim any Defendant read, censored, opened, or inspected his legal mail outside his presence, *see e.g., Hayes v. Idaho Corr. Ctr.,* 849 F.3d 1204, 1211-13 (9th Cir. 2017), and he does not claim that he was unable to get any particular item to the post. In fact, he continues to admit his legal mail was collected in his presence both on October 12, 2016—by Defendant Alvarez, and on October 17, 2016—by Officer Magallanes. *See* FAC, ECF No. 11 at 5, 14. Defendants' refusal or inability to do so immediately, and at Hammler's repeated bidding—regardless of any other legitimate correctional goal or need for institutional order—does not violate the First Amendment as a matter of law. *See Procunier v. Martinez,* 416 U.S. 396, 413 (1974) (identifying security, order, and rehabilitation as governmental interests sufficient to justify restrictions on outgoing prisoner mail); *see also Avila v. Brown*, No. 1:17-CV-01328-LJO-BAM PC, 2018 WL 1806624, at *2 (E.D. Cal. Apr. 17, 2018) (noting that prisoners "do not have a constitutional right to unlimited free access to the mail," and dismissing allegations that the failure to provide prisoners with "free pen fillers every day" violated the First Amendment).

Liberally construed, the Court also continues to find Hammler's mail problems do not allege a plausible claim for relief based on his right of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 346 (1996). Specifically, his FAC, like his original Complaint fails to allege he was "actual[ly] injur[ed]." *Id.* at 351-53; *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal" to any access to court violation. *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

Moreover, Hammler fails to allege the loss of a "non-frivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of that claim must be set forth in his FAC "as if it were being independently pursued." *Id.* at 417. Here, however, Hammler simply claims he had a "deadline," and repeatedly refers to his "legal mail" and "legal work," *see* FAC, ECF No. 7, 9, 11 at 11, 13, 14, 17—but nowhere does he identify the "non-frivolous" nature of his underlying case, or the court or time in which the documents included in his "legal mail" were allegedly due. *Christopher,* 536 U.S. at 417. This is also a necessary pleading requirement because the constitution does not guarantee inmates the wherewithal to file any and every type of legal claim—it requires only that they be provided with the tools to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. *Lewis*, 518 U.S. at 355; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.

With respect to the mail processing claims alleged in his FAC, Hammler also continues to fail to allege a plausible claim for retaliation. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). But a retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Hammler must allege Defendants retaliated against him based on constitutionally protected conduct. *Watison*, 668 F.3d at 1114. Next, he must allege

Defendants took adverse action against him. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, he must allege a causal connection between that adverse action and his protected conduct. *Watison*, 668 F.3d at 1114. Fourth, Hammler must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). Fifth, he must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

As was true of his original Complaint, Hammler's FAC alleges facts sufficient to satisfy the first two elements of a retaliation claim. *Watison*, 668 F.3d at 1114. The right to access to the court is undoubtedly "protected conduct." *Id.*; *see also Schroeder v. McDonald,* 55 F.3d 454, 461 (9th Cir. 1995) (officials may not "punish the prisoner for exercising his First Amendment right to pursue civil rights litigation in the courts.") (citing *Rizzo*, 778 F.2d at 532). And a correctional officer's refusal to accept an inmate's legal mail is sufficiently "adverse" to any claim an inmate might seek to pursue in a court of law. *See e.g., Uribe v. McKesson,* No. 08CV01285 DMS NLS, 2011 WL 9640, at *13 (E.D. Cal. Jan. 3, 2011) (finding prisoner's retaliation claims of having his legal mail rejected for processing "because it was not time for legal mail" was a sufficiently "adverse punitive response[].").

However, Hammler's FAC fails to plead facts sufficient to satisfy the remaining elements of a retaliation claim. Specifically, he fails to allege that any Defendant refused to process his mail either on October 12, 2016, or on October 16, 2016, between the hours of 6 p.m. and 10 p.m., *because* he sought to exercise his constitutional rights. *Watison*, 668 F.3d at 1114; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (retaliation claims requires a showing that Plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct."). In fact, Plaintiff continues to admit he told Defendant Hough he "needed tape" on October 16, 2016, before his legal mail could be processed. *See* FAC, ECF No. 11 at 7.

Hammler further fails to allege facts which plausibly show how or why a one-day delay in the processing of mail "would chill or silence a person of ordinary firmness from future First Amendment activities," *Rhodes*, 408 F.3d at 568, and as currently pleaded, his FAC still fails to claim that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269, that was "more than minimal." *Rhodes*, 408 F.3d at 568 n.11. Hammler's FAC also fails to allege Defendants' one-day delay in collecting his mail "failed to advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15. Indeed, as the Court has noted, Cal. Code Regs., tit. 15 § 3130 and § 3142 provide for the "orderly processing" of an inmate's outgoing confidential mail, and Hammler offers no facts to plausibly suggest how those regulations are "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984); *Watison*, 668 F.3d at 1114-15; *K'Napp*, 2015 WL 5138237 at *17 (finding CDCR's mail regulations "further[] the substantial governmental interest of governmental order.").

Finally, Hammler continues to complain that other prisoners inside the unit were allowed to forward their legal mail on October 16, 2016, and that he was subject to "different treatment." *See* FAC at 33. But this type of conclusory allegation fails to state a plausible claim for relief under the Fourteenth Amendment. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a "formulaic recitation of the elements of a cause of action will not do.'") (citation omitted).

An equal protection claim is pleaded by alleging that a defendant intentionally discriminated against the plaintiff based on his membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or by alleging facts sufficient to plausibly show that similarly situated individuals were intentionally treated differently absent a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Hammler still does not allege to be a member of any protected class. *Serrano*, 345 F.3d at 1082. And while he uses the phrase "similarly situated," *see* FAC ECF No. 11 at 11 at 33, he includes no factual content to plausibly show how other prisoners in his unit on October 12, 2016, or October 16, 2016, were treated differently or how any disparate treatment lacked legitimate purpose. *See McCollum v. Cal. Dept. of Corr. and Rehab.*, 647 F.3d 870, 880-81 (9th Cir. 2011) (Equal Protection claims require a plaintiff to "articulate which [other persons] were similarly situated or how he is similar to these [persons]."); *see also Bell Atlantic Corp.*, 550 U.S. at 553-56 & n.3 ("labels and conclusions" are insufficient to state a claim for relief).

Thus, for all these reasons, the mail processing allegations in Hammler's FAC, like those in his original Complaint, must be dismissed sua sponte and in their entirety because they continue to fail to state any First or Fourteenth Amendment claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 2. October 20, 2016 Excessive Force Claims

The remainder of the factual allegations in Hammler's FAC—all relating to an October 20, 2016 excessive force incident, and which were also alleged in *Hammler v. Alvarez, et al.*, S.D. Cal. Civil Case No. 3:17-cv-01533-WVG, against Defendants Nevarez, Hough, and Alvarez—are also dismissed from this action as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). *Compare* FAC, ECF No. 11 in 18-cv-01319 at 19-30, ¶¶ 32-55, *with* Compl., ECF No. 1 at 1-14, ¶¶ 2-25 in 18-cv-01533-WVG.

As is his wont, Hammler repeats and attempts to revive allegations in this case against Defendants Nevarez, Hough, and Alvarez that have been previously raised, litigated, and made subject to a settlement agreement in another of his many cases: *Hammler v. Alvarez*, S.D. Cal. Civil Case No. 3:18-cv-01533-WVG (ECF Nos. 31, 34, 42). While he knows he may not file multiple suits that "'that merely repeat[] pending or previously litigated claims,'" *Cato*, 70 F.3d at 1105 n.2 (applying 28 U.S.C. § 1915(d)

14

(re-codified at 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1)), he tries anyway. *See also Denton v. Hernandez*, 504 U.S. 25, 30 (1992) (recognizing Congress's concern that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits") (quotation omitted); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (duplicative or repetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915 as malicious); *Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975) (dismissal of complaint as frivolous is not an abuse of discretion where plaintiff has filed other similar complaints); *Ortega v. Ritchie*, No. 18-CV-02944-HSG (PR), 2018 WL 3744154, at *2 (N.D. Cal. Aug. 7, 2018) (same); *see also Hammler v. Hernandez*, S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD (ECF No. 5 at 5 n.2) ("Plaintiff is hereby cautioned that he may not raise duplicative claims in separate actions.") (quoting *Cato*, 70 F.3d at 1105 n.2)); *Hammler v. Kernan, et al.*, S.D. Cal. Civil Case No. 3:18-cv-01170-DMS-NLS (ECF No. 11 at 3-4) (dismissing as duplicative claims plaintiff was "already pursing in the Eastern District of California" in *Hammler v. Director of CDCR, et al.*, E.D. Civil Case No. 2:17-cv-01949-MCE-DB pursuant to 28 U.S.C. § 1915(e)(2) & § 1915A(b)).

In fact, due to "frivolous or harassing nature of [his] filings," the Honorable U.S. Magistrate Judge William V. Gallo has recommended that Hammler be subject to a pre-filing review order in the Southern District of California. *See Hammler v. Alvarez*, No. 18-CV-326-AJB (WVG), 2019 WL 549627, at *9 (S.D. Cal. Feb. 12, 2019) (Report and Recommendation to grant Defendants' request for an order declaring Hammler a vexatious litigant subject to a prefiling order).

D. <u>Leave to Amend</u>

Hammler has already been provided a short and plain statement of his First and Fourteenth Amendment pleading deficiencies, and was given an opportunity to fix his pleading. His FAC fails to do that, and it further attempts to re-generate duplicative claims litigated in a prior action against the same parties. *See Lopez*, 203 F.3d at 1127 n.8

15

(noting that if a claim is classified as frivolous, "there is by definition no merit to the underlying action and so no reason to grant leave to amend.").

Therefore, the Court denies Hammler further leave to amend as futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

### III. Conclusion and Order

Accordingly, and for all the reasons explained, the Court:

1) **DISMISSES** this civil action without further leave to amend for failure to state a claim upon which § 1983 relief can be granted and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and § 1915A(b)(1).

2) **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and

3) **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and to close the file.

**IT IS SO ORDERED**.

Dated: May 23, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge

16

3:18-cv-1319-LAB-BLM